1
2
3
4
5
6
7

8                      UNITED STATES DISTRICT COURT

9                      EASTERN DISTRICT OF CALIFORNIA

10

11    E CLAMPUS VITUS,                       No.  2:12-CV-01381-TLN-CKD

12                    Plaintiff,

13          v.                                **ORDER**

14    DAVID L. STEINER, THOMAS PEAK,
      JOHN MOORE, KARL DODGE, JOSEPH
15    ZUMWALT CHAPTER 169 E CLAMPUS
      VITUS, and DOES 1 through 50,
16
                      Defendants.
17

18

19

20          This matter is before the Court on Defendants' Motion to Dismiss the First Amended

21    Complaint.  (ECF No. 35.)  Plaintiff opposes the motion.  (Opp'n Mot. Dismiss, ECF No. 37.)

22    For reasons set forth below, Defendants' Motion is GRANTED in part and DENIED in part.[1]

23                              **BACKGROUND**

24    **A.  Parties**

25          Plaintiff E Clampus Vitus, Inc. ("Plaintiff") is a corporation organized under California

26    law.  (First Am. Compl. ("FAC"), ECF No. 29 at ¶ 1.)  Plaintiff alleges that it owns several

27    _____

28    [1] This matter was submitted without oral argument on June 14, 2013.  (Minute Order, ECF No.
      43.); see also E.D. Cal. L.R. 230(g).

                                          1

federally registered trademarks that are incontestable under 15 U.S.C. § 1065 (ECF No. 29 at ¶¶ 15–16; Exhibit A to First Am. Compl., ECF No. 29-1.)  Plaintiff states that it owns standard character marks that consist of words and letters, including: (1) "E Clampus Vitus"; (2) "Clampers"; and (3) "ECV."  (ECF No. 29 at ¶ 15; ECF No. 29-1.)  Plaintiff also alleges that it owns design marks that incorporate both symbols and words, including: (1) a coat of arms with a credo; (2) an image of a man, donkey, and the text "E Clampus Vitus"; and (3) an image of a donkey and the text "E Clampus Vitus."  (ECF No. 29 at ¶ 15; ECF No. 29-1.)  Plaintiff alleges that it uses these marks to identify members of its historical organization, to notify members of upcoming events via informational newsletters, and to sell goods consisting of, but not limited to, pins, headgear, and shirts.  (ECF No. 29 at ¶¶ 15–16.)

Defendant Joseph Zumwalt Chapter 169 E Clampus Vitus ("corporate Defendant") is a corporation that was created in 2011 and organized under California law.  (ECF No. 29 at ¶¶ 7, 17.)  Defendants David L. Steiner, Thomas Peak, John Moore, and Karl Dodge ("individual Defendants") are former members of Plaintiff and allegedly created the corporate Defendant.  (ECF No. 29 at ¶¶ 7, 17–18.)  Defendants "DOES" 1 through 50 ("'Doe' Defendants") are currently unascertained parties that Plaintiff may identify later as agents and employees of Defendants.  (ECF No. 29 at ¶ 8.)

**B.  Relevant Factual Allegations**

Plaintiff alleges that Defendants used Plaintiff's marks in violation of the Lanham Act and California Business and Professions Code on at least six occasions since 2011.  (ECF No. 29 at ¶ 14.)  Specifically, Plaintiff alleges that Defendants, in both their corporate and individual capacities, impermissibly used Plaintiff's marks to associate with Plaintiff's fraternal organization, to market and sell similar products, and to admit new members for their own personal profit.  (ECF No. 29 at ¶ 18.)

In March 2011, Defendants organized an event called "4-SKIN DOINS," where they sold pins, hats and T-shirts with Plaintiff's "E Clampus Vitus," "ECV" and "Clampers" marks, and marched under a banner that read "E Clampus Vitus."  (ECF No. 29 at ¶ 21.)

In December 2011, Defendants again sold similar goods with the aforementioned marks

1  and marched under a banner that read "Joseph Zumwalt Chapter 169 of E Clampus Vitus" at the

2  Woodland Christmas Parade.  (ECF No. 29 at ¶ 20.)

3      In September 2011, Defendants Moore, Dodge, and Peak organized the sale of food and

4  other goods under a banner that read "Georgetown Clampers" during the Founder's Day

5  Celebration.  (ECF No. 29 at ¶ 22.)  Plaintiff claims that its local chapter was precluded from

6  participating in the event because authorities mistakenly issued a permit to Defendants Moore,

7  Dodge, and Peak, believing that they were affiliated with Plaintiff's local chapter.[2]  (ECF No. 29

8  at ¶ 22.)

9      In June 2012, the corporate Defendant and Defendant Steiner raffled a motorcycle under

10  the banner "Joseph Zumwalt ECV 169."  (ECF No. 29 at ¶¶ 23, 51; Exhibit B to First Am.

11  Compl., ECF No. 29-2 at 8.)  Plaintiff claims that Defendants used an online Facebook

12  advertisement with Plaintiff's "ECV" mark to promote this event.  (ECF No. 29 at ¶¶ 23, 51; ECF

13  No. 29-2 at 2–4.)

14      In July 2012, Defendants staged an event called "Candle Light Doins" and inappropriately

15  used Plaintiff's "ECV" and "E Clampus Vitus" marks.  (ECF No. 29 at ¶ 25.)  Plaintiff also

16  alleges that the marketing flyers for the event improperly used the "E Clampus Vitus" mark as a

17  header and improperly advertised the event as an "Official Northern Alliance of ECV" event.

18  (ECF No. 29 at ¶ 25; ECF No. 29-2 at 7.)

19      In November 2012, Defendants created an online forum for "Joseph Zumwalt ECV 169"

20  to sell products such as lighters bearing Plaintiff's marks.  (ECF No. 29 at ¶ 24.)  Plaintiff

21  conducts similar sales to raise funds for charitable purposes.  (ECF No. 29 at ¶ 24.)

22  **C. Plaintiff's Claims for Relief**

23      Plaintiff claims Defendants' uses of its marks has created a likelihood of confusion due to

24  _____

25  [2] Defendants argue that Plaintiff's allegations regarding infringing sales at the Christmas parade
   and Founder's Day event are not true.  (ECF No. 35-1 at 7.)  In support of this claim, Defendant

26  Steiner submitted a declaration stating that neither he nor the corporate Defendant make or sell
   jewelry items or clothing.  (Steiner Decl., ECF No. 6-1 at ¶ 5.)  While the Court acknowledges

27  these arguments, the Court "accept[s] factual allegations in the complaint as true" for the
   purposes of a 12(b)(6) motion to dismiss.  Fayer v. Vaughn, 649 F.3d 1061, 1064 (9th Cir. 2011).

28  As a result, this Court does not consider these arguments for the disposition of this motion.

1   the similarity of conduct between Plaintiff and Defendants.  (ECF No. 29 at ¶¶ 28–29.)  Plaintiff

2   also alleges that since Defendants operate in the same geographic areas as Plaintiff, Defendants'

3   conduct is likely to cause public confusion.  (ECF No. 29 at ¶ 29.)  Plaintiff further states that the

4   individual Defendants specifically established the corporate Defendant to exploit Plaintiff's rights

5   with intent to deceive the public.  (ECF No. 29 at ¶ 27.)

6          Thus, Plaintiff alleges three claims for relief in the FAC.  Plaintiff's first claim alleges

7   trademark infringement under Section 32(1) of the Lanham Act under 15 U.S.C. § 1114(1)(a).

8   (ECF No. 29 at ¶ 35.)  Plaintiff's second claim alleges unfair competition under Section 42(a) of

9   the Lanham Act under 15 U.S.C. § 1125(a).  (ECF No. 29 at ¶ 41.)  Plaintiff's third claim alleges

10  violations of California Business and Professions Code § 17200 for unfair competition and §

11  17500 for false advertising.  (ECF No. 29 at ¶¶ 48–49.)

12       **D.  Relevant Procedural History**

13         Plaintiff filed its original complaint in May 2012.  (Compl., ECF No. 1.)  Defendants

14  moved to strike under California Civil Code § 425.16, which prohibits "strategic lawsuits against

15  public participation" ("SLAPP"), and moved to dismiss for failure to state a claim.  (Defs.' Mot.

16  Dismiss & Strike, ECF No. 6.)  After non-opposition by Plaintiff, this Court denied the motion to

17  strike, but granted the motion to dismiss with leave to amend.  (Order Den. Defs.' Anti-SLAPP

18  Mot. Strike & Granting Defs.' Mot. Dismiss, ECF No. 17.)

19         With respect to the motion to dismiss, the Court held that Plaintiff failed to state sufficient

20  facts regarding the "likelihood of confusion" from Defendants' alleged use of Plaintiff's marks.

21  (ECF No. 17 at 11.)  The Court thus dismissed Plaintiff's claims for trademark infringement

22  under 15 U.S.C. § 1114(1)(a), unfair competition under 15 U.S.C. § 1125(a), and unfair

23  competition under California Business and Professions Code § 17200.  (ECF No. 17 at 11–12.)

24  The Court also dismissed Plaintiff's false advertising claim under California Business and

25  Professions Code § 17500 because Plaintiff's allegations lacked specificity and failed to meet

26  Rule 9(b)'s heightened pleading standards as required for this claim.  (ECF No. 17 at 13.)

27         Following the Court's Order, Plaintiff filed its FAC in February 2013.  (ECF No. 29.)

28  Defendants move to dismiss and argue that Plaintiff still fails to plead facts sufficient to state

plausible claims under Rule 12(b)(6) and the Court's previous Order.  (Defs.' Re-Notice of Mot. Dismiss, ECF No. 35; Defs.' Mem. Supp. Mot. Dismiss, ECF No. 35-1.)  Defendants also argue that Plaintiff abandoned claims against "Doe" Defendants because Plaintiff failed to set forth any specific information regarding the time needed to identify these "Doe" Defendants as required in the Court's previous Order Setting Status.  (ECF No. 35-1 at 6 n.2.)  Defendants also move for attorneys' fees under Rule 11 and 28 U.S.C. § 1927 due to Plaintiff's failure to defend the initial complaint, and failure to file a Notice of Non-Opposition to the original Motion to Dismiss and Strike under Local Rule 230(c) and the Court's Order Setting Status.  (ECF No. 35-1 at 13–14.)

**STANDARD**

Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  See Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009).  Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted).  "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. Cruz v. Beto, 405 U.S. 319, 322 (1972); see also Fayer v. Vaughn, 649 F.3d 1061, 1064 (9th Cir. 2011) (holding that courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the non-moving party").  A court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  Retail Clerks Int'l Ass'n v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief."  Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

1   Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

2   factual allegations." United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir.

3   1986); see also Fayer, 649 F.3d at 1064 (finding that conclusory allegations of law and

4   unwarranted inferences are insufficient to defeat a motion to dismiss). While Rule 8(a) does not

5   require detailed factual allegations, "it demands more than an unadorned, the defendant-

6   unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A pleading is insufficient if it offers

7   mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."

8   Twombly, 550 U.S. at 555; Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause

9   of action, supported by mere conclusory statements, do not suffice."). Moreover, it is

10   inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the

11   defendants have violated the . . . laws in ways that have not been alleged." Associated Gen.

12   Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

13   Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough

14   facts to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 697 (quoting

15   Twombly, 550 U.S. at 570). Only where a plaintiff has failed to nudge his or her claims "across

16   the line from conceivable to plausible" is the complaint properly dismissed. Id. at 680 (quoting

17   Twombly, 550 U.S. at 570). While the plausibility requirement is not akin to a probability

18   requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully."

19   Id. at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to

20   draw on its judicial experience and common sense." Id. at 679.

21   In ruling upon a motion to dismiss, the court may consider only the complaint, any

22   exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of

23   Evidence 201. See Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988); Isuzu

24   Motors Ltd. v. Consumers Union of United States, Inc., 12 F. Supp. 2d 1035, 1042 (C.D. Cal.

25   1998).

26   **ANALYSIS**

27   **A.  Claims Against Individual Defendants**

28   Defendants argue that Plaintiff fails to allege sufficient facts to impose individual liability

6

1    on the individual Defendants for the corporate Defendant's actions.  (ECF No. 35-1 at 3–5.)

2    Defendants also argue that any uses of Plaintiff's marks by the individual Defendants are

3    permitted for identification or nominative purposes.  (ECF No. 35-1 at 5–6.)  For the reasons set

4    forth below, this Court finds Plaintiff alleges sufficient facts to assert claims against the

5    individual Defendants.

6           ***1.  Individual Liability for Individual Actions***

7           Defendants move to dismiss individual Defendants, arguing Plaintiff fails to allege

8    sufficient facts to support claims against Defendants Steiner, Peak, Moore, and Dodge.  Under the

9    Lanham Act, natural persons can be held individually liable for trademark infringement.  15

10    U.S.C. § 1125(a) (imposing liability on "[a]ny person who, on or in connection with any goods or

11    services . . . uses in commerce any . . . name . . . which . . . is likely to cause confusion."); 15

12    U.S.C. § 1127 (defining "person" to include a natural person); <u>see also</u> <u>Chanel, Inc. v. Italian</u>

13    <u>Activewear of Fla., Inc.</u>, 931 F.2d 1472, 1477 (11th Cir. 1991).

14           Defendants argue that Plaintiff only alleges that each defendant was a member acting on

15    behalf of the corporation.  (ECF No. 35-1 at 4.)  This is incorrect.  Plaintiff alleges that the

16    individual Defendants violated Plaintiff's marks not only through a corporate entity, but also

17    through their individual capacities as well.  (ECF No. 29 at ¶ 18 ("Plaintiffs are informed, believe

18    and on that basis allege that it is via that newly created vehicle *as well as in their individual*

19    *capacity* that the defendants and each of them have directly or indirectly used the marks owned

20    by Plaintiff . . . .") (emphasis added).)  Plaintiff also states specific details regarding the

21    individual Defendants' particular roles in certain events.  Plaintiff alleges that Defendants Moore,

22    Dodge, and Peak infringed Plaintiff's marks at the Founder's Day Celebration in 2011 with their

23    use of the "Clampers" mark.  (ECF No. 29 at ¶ 22.)  Plaintiff further alleges Defendant Steiner

24    helped organize a motorcycle auction and advertised the event on Facebook.  (ECF No. 29 at ¶

25    23.)  Thus, Plaintiff sufficiently states plausible claims against all of the individual Defendants.

26           ***2.  Individual Liability for Corporate Actions***

27           Defendants also argue that Plaintiff fails to allege sufficient facts to impose individual

28    liability for the corporate Defendant's actions.  (ECF No. 35-1 at 3–5.)  Relying on <u>Wilden Pump</u>

1   & Eng'g Co. v. Pressed & Welded Prods. Co., 655 F.2d 984, 990 (9th Cir. 1981), Defendants

2   argue that Plaintiff fails to establish individual liability for any infringement by the corporate

3   Defendant because Plaintiff fails to allege that the individual defendants were corporate officers

4   that actively and knowingly caused the alleged infringement.  (ECF No. 35-1 at 4.)  Defendants'

5   reliance is misplaced because the standard set forth in Wilden allows liability to attach even when

6   the individuals are not necessarily corporate officers.

7        In Wilden, the court dismissed patent infringement claims against an individual who was

8   only an administrative employee and was not a corporate officer, a sole shareholder, or an alter

9   ego of the corporation.  Wilden, 655 F.2d at 990.  However, the court noted that other high-

10  ranking individuals who personally controlled, supervised, and directed any infringement could

11  also be held individually liable for infringement, including original incorporators of a corporation

12  and major shareholders in a small family corporation.  Id.

13       Even though Plaintiff did not explicitly label the individual Defendants as corporate

14  officers, Plaintiff alleges that the individual Defendants originally created the corporate

15  Defendant to exploit Plaintiff's marks.  (ECF No. 29 at ¶¶ 17–18.)  Defendants argue that

16  permitting Plaintiff's allegations would allow volunteer members of an organization to be held

17  liable for infringement.  (ECF No. 35-1 at 4–5; Defs.' Reply to Pl.'s Opp'n, ECF No. 42 at 3.)

18  These arguments mischaracterize Plaintiff's allegations.  Plaintiffs are not alleging that the

19  individual Defendants are liable because they were simply volunteer members of an organization.

20  Rather, Plaintiff argues that these specific individual Defendants had a unique role in creating the

21  corporate Defendant and organizing the infringement of Plaintiff's marks.  (ECF No. 29 at ¶¶ 17–

22  18.)  Defendants further assert that Plaintiff's claims against the "Doe" Defendants demonstrate

23  that Plaintiff's only basis for establishing claims against the individual Defendants is membership

24  with the corporate Defendant.  (ECF No. 35-1 at 4–5.)  The Court finds this argument

25  unpersuasive because even if Plaintiff wished to add parties previously identified as "Doe"

26  Defendants, Plaintiff still must satisfy all relevant pleading requirements referenced above.

27  Simply alleging that an individual was a volunteer member would not suffice.  Thus, under

28  Wilden's framework, Plaintiff alleges sufficient facts to state a plausible claim for individual

8

1    liability for the corporate defendant's trademark infringement.

2    　　　　Following <u>Wilden</u>, courts have emphasized that an individual can be found liable for a

3    corporation's trademark infringement if he or she acted "knowingly, intentionally and

4    deliberately." <u>Comm. for Idaho's High Desert, Inc. v. Yost</u>, 92 F.3d 814, 818 (9th Cir. 1996); <u>see</u>

5    <u>also</u> <u>Chanel</u>, 931 F.2d at 1477–78 (finding that individuals must have acted "actively and

6    knowingly" to impose individual liability for corporate action).  Merely selling the infringing

7    items cannot turn an individual defendant into a "moving, active, conscious force." <u>Chanel</u>, 931

8    F.2d at 1478 n.8.  Rather, courts must consider whether the alleged infringer "actively

9    participated as a moving force in the decision to engage in the infringing acts, or otherwise caused

10   the infringement as a whole to occur." <u>Id.</u>

11   　　　　In <u>Yost</u>, the three defendants were the only members of an organization and served as its

12   corporate officers.  In finding liability, the court noted how defendants created the corporate

13   entity with the purpose of causing confusion in their use of plaintiff's marks. <u>Yost</u>, 92 F.3d at

14   818.  The court found that this intent, along with defendant's use of plaintiff's marks in public

15   events such as hearings on local environmental policy, demonstrated that the individuals acted

16   "knowingly, intentionally and deliberately." <u>Id.</u>

17   　　　　On review of summary judgment, the court in <u>Chanel</u> similarly found that both a chief

18   executive officer ("CEO") and an individual defendant who was not a corporate officer could be

19   held individually liable for a corporation's trademark infringement. <u>Chanel</u>, 931 F.2d at 1478.

20   The non-CEO defendant sold the infringing merchandise, looked after the showroom when the

21   CEO was out of town, sent warning messages to the CEO, and removed the goods after becoming

22   aware of possible litigation. <u>Id.</u>  Even though the non-CEO defendant was not involved in the

23   purchase or promotion of the infringing goods, the court found these facts, when taken together,

24   may be enough to infer that he "actively and knowingly" caused the infringement. <u>Id.</u>

25   　　　　In the instant case, Plaintiff alleges sufficient facts that demonstrate that the individual

26   Defendants acted "knowingly, intentionally and deliberately" on behalf of the corporate

27   Defendant.  Like the defendants in <u>Yost</u>, the individual Defendants allegedly created the

28   corporate Defendant and intended to exploit Plaintiff's marks.  (ECF No. 29 at ¶¶ 17–18, 27.)

9

1   Similar to the non-CEO defendant in Chanel, the individual Defendants here allegedly organized

2   the sales of goods bearing Plaintiff's marks.  (ECF No. 29 at ¶¶ 20–21.)  This situation is even

3   more compelling than in Chanel because Plaintiff alleges that the individual Defendants were

4   directly involved in the online and print promotion of events that sold allegedly infringing goods.

5   (ECF No. 29 at ¶¶ 24–25.)  Taking the alleged facts together, the Court finds that Plaintiff alleges

6   sufficient facts to state plausible claims against the individual Defendants for their actions

7   performed under the corporate Defendant.

8   ### 3.   *Permitted Uses for Identification or Nominative Purposes*

9        Defendants also argue that their alleged uses of Plaintiff's marks are only for permissible

10  identification or nominative purposes.  (ECF No. 35-1 at 5.)  Courts permit identification or

11  nominative use when a party: (1) uses marks only when no descriptive substitute exists; (2) uses

12  no more of the mark than necessary; and (3) does nothing to suggest sponsorship or endorsement

13  by the mark holder.  Playboy Enter., Inc. v. Welles, 279 F.3d 796, 801 (9th Cir. 2002).  Applying

14  this three-part test, the court in Playboy permitted a model's nominative use of "Playmate of the

15  Year" on her website's headlines and banner advertisements because she had no substitute to

16  describe her title, limited her use of the mark, and actively disclaimed any sponsorship.  Id. at

17  802–03.  The court found that she could not otherwise properly identify herself as a "Playmate of

18  the Year" without "venturing into absurd descriptive phrases."  Id. at 802 (internal citations

19  omitted).  On the other hand, the court found that her repeated and stylized use of "PMOY '81"

20  on her website's background was not necessary to describe herself (i.e., "Playmate of the Year"

21  was sufficient), and therefore she could not demonstrate her need to use the "PMOY '81" mark

22  for descriptive purposes.  Id. at 804.

23       At this stage of the pleadings, Defendants have not satisfied Playboy's three-part test for

24  permitting nominative use.  Under the first part, Defendants fail to identify any need to use

25  Plaintiff's marks due to a lack of a descriptive substitute.  Rather, Plaintiff alleges that Defendants

26  could simply identify themselves as "Joseph Zumwalt Chapter 169" without infringing upon

27  Plaintiff's marks.  (See ECF No. 29 at ¶ 24.)  Defendants similarly fail to identify limits on their

28  use of Plaintiff's marks.  Unlike the defendant in Playboy, Defendants fail to identify how they

1  actively disclaimed any sponsorship or endorsement.  To the contrary, Plaintiff alleges that

2  Defendants claim their events are "official" to confuse the public into thinking that Defendants

3  are an authorized chapter.  (ECF No. 29 at ¶ 25.)  Thus, Plaintiff alleges sufficient facts that

4  Defendants used the marks beyond any permissible identification or nominative uses.

5  **B.  Trademark Infringement and Unfair Competition Claims**

6        Defendants argue that Plaintiff fails to allege certain required elements of trademark

7  infringement and unfair competition claims brought under the Lanham Act and the California

8  Business and Professions Code.  (ECF No. 35-1 at 6–12.)  Specifically, Defendants argue that

9  Plaintiff fails to state sufficient facts to satisfy the "likelihood of confusion" test and to show that

10  Defendants sold "non-genuine" goods with the infringing marks.  (ECF No. 35-1 at 6–9.)

11  Additionally, Defendants argue that Plaintiff fails to specify the type of unfair competition

12  alleged under the Lanham Act and to allege a tangible, economic injury under California unfair

13  competition law.  (ECF No. 35-1 at 9–12.)  However, an examination of FAC reveals that

14  Plaintiff alleges sufficient facts to state plausible claims for trademark infringement and unfair

15  competition.

16         ***1.  Likelihood of Confusion under <u>Sleekcraft</u>***

17        Defendants move to dismiss Plaintiff's trademark infringement and unfair competition

18  claims because the FAC fails to plead facts sufficiently alleging a likelihood of confusion.  (ECF

19  No. 35-1 at 8–9.)  "To plead a prima facie case of trademark infringement, the plaintiff must

20  allege that a mark is confusingly similar to a valid and protectable mark of the plaintiff."  <u>Herb</u>

21  <u>Reed Enters., Inc. v. Bennett</u>, No. 2:10-CV-01981 (JCM), 2011 WL 2607079, at *2 (D. Nev. June

22  30, 2011) (citing <u>Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.</u>, 174 F.3d 1036, 1046 (9th

23  Cir. 1999)).  "The 'ultimate test' . . . [is] whether the public is likely to be deceived or confused

24  by the similarity of the marks."  <u>Century 21 Real Estate Corp. v. Sandlin</u>, 846 F.2d 1175, 1178

25  (9th Cir. 1988) (internal citations omitted).  The same test applies to unfair competition claims

26  under both federal and California law.  <u>Century 21 Real Estate LLC v. All Prof'l Realty, Inc.</u>, No.

27  2:10-CV-02751 (WBS), 2011 WL 221651, at *10 (E.D. Cal. Jan. 24, 2011); <u>see also</u> <u>Murray v.</u>

28  <u>Cable Nat'l Broad. Co.</u>, 86 F.3d 858, 860 (9th Cir. 1996).

"The 'likelihood of confusion' inquiry generally considers whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin or source of the goods or services bearing one of the marks or names at issue in the case." Rearden LLC v. Rearden Commerce, Inc., 683 F.3d 1190, 1209 (9th Cir. 2012). "Eight factors, sometimes referred to as the Sleekcraft factors, guide the inquiry into whether a defendant's use of a mark is likely to confuse consumers." Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., 618 F.3d 1025, 1030 (9th Cir. 2010) (citing AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348–49 (9th Cir. 1979)).

> These eight factors are: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines.

Rearden, 683 F.3d at 1209 (citing Sleekcraft, 599 F.2d at 348–49). "This eight-factor analysis is pliant, illustrative rather than exhaustive, and best understood as simply providing helpful guideposts." Fortune Dynamic, 618 F.3d at 1030 (internal quotation marks omitted).

Courts interpret the test as a sliding scale rather than a scorecard or checklist. See id. at 1031 (citing Thane Int'l, Inc. v. Trek Bicycle Corp., 305 F.3d 894, 901 (9th Cir. 2002)). "Although some factors—such as the similarity of the marks and whether the two companies are direct competitors—will always be important, it is often possible to reach a conclusion with respect to likelihood of confusion after considering only a subset of the factors." Brookfield, 174 F.3d at 1054 (citing Dreamwerks Prod. Grp. v. SKG Studio, 142 F.3d 1127, 1130–32 (9th Cir. 1998)).

An analysis of the Sleekcraft factors demonstrates that Plaintiff has sufficiently alleged a plausible "likelihood of confusion." Under the first factor, stronger marks are typically those that are "inherently distinctive" and likely to confuse consumers when used similarly by another. Entrepreneur Media, Inc. v. Smith, 279 F.3d 1135, 1141 (9th Cir. 2002) (quoting Sleekcraft, 599 F.2d at 349). Trademark registration of a particular mark supports the distinctiveness of a mark. Lahoti v. VeriCheck, Inc., 586 F.3d 1190, 1199 (9th Cir. 2009). Plaintiff here alleges that it has federally registered "E Clampus Vitus," "ECV," "Clampers," and other marks that have become

12

1  incontestable under 15 U.S.C. § 1065.  (ECF No. 29 at ¶¶ 15–16, ECF No. 29-1.)  Because these

2  marks are alleged to be both registered and incontestable, the Court finds Plaintiff has sufficiently

3  alleged the marks are valid and distinctive.  See Lahoti, 586 F.3d at 1199.

4       Under the second factor, the Court examines whether the consuming public is likely to

5  associate Defendants' goods and services with those sold by Plaintiff.  Fortune Dynamic, 618

6  F.3d at 1035 (citing Brookfield, 174 F.3d at 1056).  Throughout the FAC, Plaintiff alleges that

7  Defendants' activities are similar, if not identical, to Plaintiff's activities.  Plaintiff's marks are

8  used to indicate membership in a fraternal historical organization and in conjunction with the sale

9  of hats, shirts, and pins, and other related goods at various community events.  (ECF No. 29 at ¶¶

10  15–16.)  Plaintiff alleges that Defendants are selling the same types of merchandise at similar

11  events where Plaintiff or its chapters also participate.  (ECF No. 29 at ¶¶ 20–22.)  Plaintiff

12  additionally alleges that Defendants' online raffles are similar to those conducted by Plaintiff to

13  raise funds.  (ECF No. 29 at ¶ 24.)  Thus, this Court finds that Plaintiff has sufficiently alleged

14  that Defendants' activities are proximate to those of Plaintiff.

15       Under the third factor evaluating similarity of the marks, Defendants argue that Plaintiff

16  fails to specify which of the registered trademarks for goods were allegedly used on Defendants'

17  goods or services.  (ECF No. 35-1 at 7.)  Plaintiff however alleges that Defendants exactly used:

18  (1) the "E Clampus Vitus," "ECV," and "Clampers" marks on hats, shirts, and pins sold at the

19  Woodland Christmas Parade and "4-SKIN DOINS" events; (2) the "Clampers" trademark on a

20  banner while marching at the Founder's Day parade; (3) the "ECV" marks through online

21  advertising and an online forum; and (4) the "ECV" and "E Clampus Vitus" marks on

22  advertisements for the "Candle Light Doins" event.  (ECF No. 29 at ¶¶ 20–25; ECF No. 29-2 at

23  7.)  As Plaintiff states, "[t]his is not a case of a different name which closely approximates that of

24  the Plaintiff, it is the same."  (ECF No. 29 at ¶ 19 (emphasis added).)

25       Defendants also contend that Plaintiff fails to state a claim for the sale of goods using the

26  "E Clampus Vitus" mark because it is a "collective membership" mark and not a "registered

27  trademark for goods."  (ECF No. 35-1 at 8.)  Defendants similarly argue that Plaintiff fails to state

28  a claim for Defendants' use of "Clampers" on a banner while marching at the Founder's Day

1    Parade because the "Clampers" mark is only for registered goods.  (ECF No. 35-1 at 9.)  Both of

2    these arguments ignore factual allegations made in the FAC.  Plaintiff alleges that "E Clampus

3    Vitus" is not only registered as a collective membership mark, but is also registered for use in

4    commerce on pins and hats.  (ECF No. 29 at ¶ 15; ECF No. 29-1 at 12–13.)  Additionally,

5    Plaintiff alleges that it uses the "Clampers" mark to indicate membership in a fraternal historical

6    organization and to inform the public of Plaintiff's causes and gatherings.  (ECF No. 29 at ¶ 16.)

7    Thus, the Court finds that Plaintiff sufficiently alleges the third factor of the <u>Sleekcraft</u> test.

8            Under the fourth factor, Defendants argue that Plaintiff only alleges that unidentified

9    "local authorities" were allegedly confused at the Founder's Day Celebration.  (ECF No. 35-1 at

10   9.)  Defendants contend that Plaintiff fails to allege any other facts that indicate actual consumer

11   confusion.  (ECF No. 35-1 at 9.)  These assertions overstate the emphasis on presenting actual

12   confusion instead of the likelihood of confusion and misstate the FAC's factual allegations.

13   "[T]he failure to prove instances of actual confusion is not dispositive against a trademark

14   plaintiff, because actual confusion is hard to prove; difficulties in gathering evidence of actual

15   confusion make its absence generally unnoteworthy."  <u>Au-Tomotive Gold, Inc. v. Volkswagen of</u>

16   <u>America, Inc.</u>, 457 F.3d 1062, 1075 (9th Cir. 2006) (quoting <u>Brookfield</u>, 174 F.3d at 1050).

17   "Where the marks are identical, the likelihood that a knowledgeable consumer would be confused

18   as to the mark's origin is great."  <u>Herb Reed</u>, 2011 WL 2607079, at *3.  Regardless, Plaintiff still

19   alleges specific facts regarding the presence of actual confusion.  Plaintiff states that Defendants'

20   uses of its marks while conducting sales were designed to be confusing since they implied

21   association with Plaintiff's organization.  (ECF No. 29 at ¶ 37.)  Plaintiff additionally alleges that

22   new members mistakenly enrolled with Defendants' organization because of the use of Plaintiff's

23   marks.  (ECF No. 29 at ¶ 25.)  Thus, Plaintiff pleads sufficient facts that plausibly allege that

24   Defendants' uses of Plaintiff's marks led to actual confusion by consumers, potential members,

25   and the general public.

26           Plaintiff also pleads facts demonstrating the fifth and seventh <u>Sleekcraft</u> factors on

27   marketing channels and intent.  Plaintiff alleges that Defendants employed similar marketing

28   channels on Facebook and online forums to promote the sale of goods bearing "ECV" marks.

(ECF No. 29 at ¶¶ 23–24; ECF No. 29-2 at 2–6.)  Plaintiff further alleges that Defendants operate and advertise in the same geographic areas as Plaintiff does in Georgetown and Woodland.  (ECF No. 29 at ¶ 29.)  In terms of intent, Plaintiff repeatedly alleges that Defendants are attempting to use the "long standing history" of Plaintiff and its marks to cause confusion in the marketplace for personal gain.  (ECF No. 29 at ¶¶ 18–20, 27.)  Thus, the Court finds that Plaintiff alleges sufficient facts regarding the fifth and seventh factors.

This Court, considering the <u>Sleekcraft</u> factors as a whole, determines that Plaintiff has plausibly alleged that a "likelihood of confusion" results from Defendants' uses of Plaintiff's marks.  Even though Plaintiff does not discuss the sixth and eighth factors, Plaintiff sufficiently alleges a "likelihood of confusion" because it has made a strong showing of facts supporting a majority of the <u>Sleekcraft</u> factors.  <u>Au-Tomotive Gold</u>, 457 F.3d at 1078.  Throughout the FAC, Plaintiff alleges that Defendants infringed upon its registered marks at similar events by exactly copying Plaintiff's marks and intentionally confusing the public in areas where Plaintiff operates.  Thus, unlike the original complaint, Plaintiff's FAC alleges sufficient facts to demonstrate a "likelihood of confusion."

### 2. Genuineness of Goods

Defendants also argue that the FAC fails to state a claim under Section 32(1) of the Lanham Act because Plaintiff does not allege that Defendant sold "non-genuine" goods bearing Plaintiff's marks.  (ECF No. 35-1 at 7–8.)  Relying on <u>NEC Elecs. v. CAL Circuit Abco</u>, 810 F.2d 1506 (9th Cir. 1987), Defendants argue that if goods being sold are genuine paraphernalia then there cannot be any infringement.  (ECF No. 35-1 at 8.)

The Lanham Act prohibits the unpermitted "reproduction, counterfeit, copy, or colorable imitation" of a mark.  15 U.S.C. § 1114(1)(a).  Defendant is correct in stating that the authorized resale of a lawfully purchased good bearing a trademark typically does not establish liability under the Lanham Act.  <u>NEC</u>, 810 F.2d at 1509.

However, Defendants' reliance on <u>NEC</u> is misplaced.  In <u>NEC</u>, the parties stipulated that the defendant's goods were genuine products purchased from the plaintiff manufacturer's foreign parent company.  <u>Id.</u> at 1508.  Such is not the case here.  Plaintiff does not allege or stipulate that

1    Defendants are re-selling genuine goods originally manufactured by Plaintiff.  Rather, Plaintiff

2    alleges that Defendants "have directly or indirectly used the marks owned by Plaintiff . . . *to*

3    *market similar products* in competition with Plaintiff or its recognized chapters . . . ."  (ECF No.

4    29 at ¶ 18 (emphasis added).)  Defendants ignore this distinction when they argue that Plaintiff

5    fails to state a plausible claim.  Moreover, unlike in <u>NEC</u>, Plaintiff here alleges that Defendants

6    were unlawfully selling goods "of one make under the trade mark of another."  <u>NEC</u>, 810 F.2d at

7    1510.  While the Court acknowledges Defendants' argument that they are merely re-selling goods

8    with Plaintiff's marks, the Court "accept[s] factual allegations in the complaint as true" for the

9    purposes of a 12(b)(6) motion to dismiss.  <u>Fayer</u>, 649 F.3d at 1064.  As a result, this Court does

10   not consider this specific argument for the disposition of this motion.  Thus, while Plaintiff does

11   not explicitly label these goods as "non-genuine," the FAC pleads sufficient facts alleging that

12   Defendants are marketing potentially infringing goods within the meaning of § 1114(1)(a).

13       Additionally, § 1114(a)(1) not only covers the actual sales of goods, but also extends to

14   "offering for sale, distribution, *or advertising of any goods or services* on or in connection with

15   which such use is likely to cause confusion, or to cause mistake, or to deceive."  15 U.S.C. §

16   1114(1)(a) (emphasis added).  Throughout the FAC, Plaintiff states that it uses its marks when

17   advertising at parades, fundraisers, and other community events.  (ECF No. 29 at ¶¶ 20–24.)

18   Plaintiff alleges that Defendants organized similar community events that unlawfully used

19   Plaintiff's marks in advertisements to confuse or deceive consumers.  (ECF No. 29 at ¶¶ 22–24.)

20   Regardless of how Defendants obtained their goods, allegations that Defendants inappropriately

21   used Plaintiff's marks in advertising serve as independent basis of infringement under Section

22   32(1).  Thus, Plaintiff's factual allegations state a plausible claim pursuant to Section 32(1) of the

23   Lanham Act.

24       ***3.  Federal Unfair Competition under Section 43(a) of the Lanham Act***

25       Defendants additionally move to dismiss Plaintiff's federal unfair competition claim

26   because of Plaintiff's failure to allege the specific types of unfair competition embodied in

27   Section 43(a) of the Lanham Act.  (ECF No. 35-1 at 9–10.)  Section 43(a) prohibits "any false

28   designation of origin, false or misleading description of fact, or false or misleading representation

16

of fact" that is likely "to cause confusion," "to deceive as to the affiliation," or "[to]

misrepresent[] the nature, characteristics, qualities, or geographic origin of his or her or another

person's goods, services, or commercial activities."  15 U.S.C. § 1125(a)(1).  "Section 43(a) of

the Lanham Act prohibits actions like trademark infringement that deceive consumers and impair

a producer's goodwill."  <u>Dastar Corp. v. Twentieth Century Fox Film Corp.</u>, 539 U.S. 23, 32

(2003).  Despite Defendants' claims, Plaintiff alleges several false or misleading representations

of fact that fall within the scope of Section 43(a).  Plaintiff states that Defendants use of "E

Clampus Vitus," "ECV," and "Clampers" marks on hats, shirts, and pins sold at various events

lead to confusion regarding the origin of these goods.  (ECF No. 29 at ¶¶ 20–22.)  Plaintiff further

alleges that the use of its marks inappropriately suggest affiliation or sponsorship of Defendants'

sales.  (ECF No. 29 at ¶¶ 20–22.)  Plaintiff states Defendants' misleading descriptions have

deceived the public, impaired the Plaintiff's established goodwill, and led to lost sales.  (ECF No.

29 at ¶¶ 42, 44.)  Thus, Plaintiff alleges a plausible claim under Section 43(a) of the Lanham Act.

### 4.  Requirements under California Unfair Competition Law

Defendants also argue that the FAC fails to state a plausible claim for unfair competition

under California law because Plaintiff does not allege a tangible, economic injury.  (ECF No. 35-

1 at 11–12.)  Under California Business and Professions Code § 17200, "the 'lost money or

property' requirement [] requires a plaintiff to demonstrate 'some form of economic injury.'"

<u>Hinojos v. Kohl's Corp.</u>, 718 F.3d 1098, 1104 (9th Cir. 2013) (citing <u>Kwikset Corp. v. Superior</u>

<u>Court of Orange Cnty.</u>, 51 Cal. 4th 310, 323 (2011)).  Plaintiff alleges that Defendants' actions

have decreased Plaintiff's income and profits from sales of merchandise bearing their protected

marks.[3]  (ECF No. 29 at ¶ 51.)  Therefore, Plaintiff states a plausible claim pursuant to California

---

[3] Plaintiff further alleges that because of Defendants' acts, its authorized Growlersberg chapter was unable to participate in the Founder's Day Celebration and was unable to obtain any revenue from sales.  (ECF No. 29 at ¶ 22.)  Defendants argue that the Plaintiff's Growlersberg chapter is a separate legal entity from Plaintiff and therefore, even if that chapter was injured, Plaintiff has no standing to assert claims on behalf of a separate legal entity.  (ECF No. 35-1 at 12.)  Because the Court finds that Plaintiff has stated plausible facts to state a tangible, economic injury without this allegation, the Court need not resolve the issue of whether the chapter is a separate legal entity in deciding this motion.  Furthermore, Defendants did not move to strike Plaintiff's allegation regarding the authorized Growlersberg chapter and the Founder's Day Celebration.

1  Business and Professions Code § 17200 because the pleaded facts allege a plausible, tangible

2  economic injury upon which Plaintiff can recover.

3          Defendants also argue that Plaintiff fails to state sufficient facts to state a claim for unfair

4  competition based on an alleged illegal raffle under California law.  (ECF No. 35-1 at 12.)

5  Plaintiff alleges that Defendants conducted the raffle without obtaining approval of the Attorney

6  General of the State of California as required by California Penal Code § 320.5(b) and California

7  Code of Regulations, title 11, § 410, *et seq.*  (ECF No. 29 at ¶ 51.)  As Defendants point out, these

8  code provisions impose certain specific requirements on non-profits that conduct raffles.

9  Plaintiff, however, does not allege additional facts regarding this raffle and how Defendants

10  allegedly failed to meet the requirements of California Penal Code § 320.5(b) or California Code

11  of Regulations, title 11, § 410, *et seq.*  (ECF No. 35-1 at 14.)  While by itself this statement may

12  have been insufficient to state a plausible claim for relief under § 17200, as set forth above,

13  Plaintiff alleges sufficient facts regarding other acts that satisfy the pleading requirements for a

14  claim brought under § 17200.  Thus, this Court finds that the FAC states sufficient facts to state

15  an unfair competition claim pursuant to § 17200.[4]

16      **C.  Heightened Pleading Requirements for California False Advertising Claim**

17          Defendants also move to dismiss the false advertising claims made under California

18  Business and Professions Code § 17500 based on Plaintiff's continued use of conclusory

19  language and failure to plead fraud with sufficient particularity under Rule 9(b).  (ECF No. 35-1

20  at 13.)  "False advertising under section 17500 . . . is a claim sounding in fraud."  <u>Sensible Foods,</u>

21  <u>LLC v. World Gourmet, Inc.</u>, No. 11-2819 (SC), 2011 WL 5244716, at *7 (N.D. Cal. Nov. 3,

22  2011) (citing <u>In re Tobacco II Cases</u>, 46 Cal. 4th 298, 312 n.8 (2009)).  Because these claims are

23  subject to heightened pleading requirements under Rule 9(b), "Plaintiff must allege facts

24  identifying specific allegedly false statements, including facts showing how the statements were

25  misleading."  <u>Id.</u>  Pleadings alleging fraud must "articulate the who, what, when, where, and how

26  of the misconduct alleged."  <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1126 (9th Cir. 2009).

27  ───────────────

28  [4] Defendants did not move to strike these factual allegations regarding the raffle.

1    Circumstances constituting the alleged fraud must "be specific enough to give defendants notice

2    of the particular misconduct . . . so that they can defend against the charge and not just deny that

3    they have done anything wrong."  Id. at 1124 (citing Bly-Magee v. California, 236 F.3d 1014,

4    1019 (9th Cir. 2001)) (internal quotation marks omitted).

5         Plaintiff pleads particularity sufficiently in the FAC because it identifies Defendants as the

6    infringers, names specific events, and describes how Defendants allegedly engaged in false

7    advertising.  For instance, Plaintiff alleges that at the Woodland Candle Light Doins event in June

8    2012, Defendants misrepresented themselves by using the "E Clampus Vitus" marks and claiming

9    to be an "official" event.  (ECF No. 29 at ¶ 25; ECF No. 29-2 at 7.)  Plaintiff states that at this

10   event, Defendants signed up new members who believed they were enrolling in Plaintiff's

11   organization.  (ECF No. 29 at ¶ 25.)  Rather than using conclusory language, the FAC specifically

12   alleges that this use of terms such as "official" along with Plaintiff's marks could be misleading

13   because potential members may think Plaintiff is hosting or sponsoring the event.  (ECF No. 29 at

14   ¶ 25.)  Additionally, Plaintiff states that at the Woodland Christmas Parade in December 2011,

15   Defendants misrepresented themselves as a chapter of E Clampus Vitus through signs and sold

16   hats, shirts, and jewelry pins with the "E Clampus Vitus," "ECV," and "Clampers" marks.  (ECF

17   No. 29 at ¶ 20.)  Plaintiff alleges that Defendants performed these acts in order to exploit the

18   established rights and goodwill of Plaintiff for personal gain and aggrandizement.  (ECF No. 29 at

19   ¶ 27.)  Unlike the original complaint, the FAC identifies false statements of fact in a sufficient

20   manner to provide Defendants with notice of the particular misconduct alleged.  Thus, Plaintiff

21   pleads sufficient facts with particularity to meet the heightened pleading requirements to allege a

22   false advertising claim under California law.

23        **D.  Abandonment of the "Doe" Defendants**

24        Defendants move to strike the "Doe" Defendants because Plaintiff failed to specify the

25   time needed to identify them in the Joint Status Report as required by the Order Setting Status.

26   (ECF No. 35-1 at 6 n.2.)  The Court has discretion to dismiss claims against "Doe" defendants for

27   failure to timely identify or serve them within the time-period prescribed by Rule 4(m).  Mozzer

28   v. Prison Health Svc., 250 Fed App'x 786, 787 (9th Cir. 2007); West v. Fed. Bureau of Prisons,

1   1:09-CV-01277 (LJO), 2012 WL 1391938, at *1 (E.D. Cal. Apr. 20, 2012).  Under Rule 4(m),

2   "[i]f a defendant is not served within 120 days after the complaint is filed, the court—on motion

3   or on its own after notice to the plaintiff—must dismiss the action without prejudice against that

4   defendant or order that service be made within a specified time."  Fed. R. Civ. P. 4(m).

5        Plaintiff has still not identified or served any of "Doe" Defendants, despite originally

6   filing this action more than one year ago.  Even though Rule 4(m) allows the court to extend time

7   for service if plaintiff shows good cause, this Court has already notified Plaintiff that "[f]ailure to

8   set forth specific information regarding the time Plaintiff(s) needs to identify any 'Doe'

9   defendants will be deemed an abandonment of any claims against such defendants."  (Order

10  Setting Status, ECF No. 4 at 2 n.2.)  Plaintiff failed to include any specific information regarding

11  the time needed to identify "Doe" defendants in the Joint Status Report and in its Opposition to

12  Defendant's Motion to Dismiss.  Plaintiff has also not requested additional time or preliminary

13  discovery to identify the alleged "Doe" Defendants listed in the FAC.  Thus, the Court dismisses

14  Plaintiff's claims against the "Doe" Defendants without prejudice.[5]

15      **E. Requests for Sanctions**

16       Defendants argue that the Court should sanction Plaintiff under Rule 11 and 28 U.S.C. §

17  1927 for Plaintiff's failure to defend the initial Complaint and failure to file a Notice of Non-

18  Opposition to the original Motion to Dismiss and Strike in accordance with Local Rule 230(c)

19  and the Court's Order Setting Status.  (ECF No. 35-1 at 13.)  Under its discretion, this Court

20  denies Defendants' requests for sanctions, finding that Plaintiff did not "unreasonably and

21  vexatiously" multiply proceedings within the meaning of 28 U.S.C. § 1927.  However, this Court

22  admonishes Plaintiff for failing to submit a Notice of Non-Opposition as required under Local

23  Rules and the Court's Order.  Future non-compliance with Local Rules or this Court's orders may

24  result in sanctions as appropriate.  E.D. Cal. L.R. 110 ("Failure of counsel or of a party to comply

25  with these Rules or with any order of the Court may be grounds for imposition by the Court of

26

---

[5] This does not imply that Plaintiff can simply file another amended complaint to specify the time
27  needed to identify any "Doe" Defendants.  Rather, should Plaintiff wish to amend its pleadings
and bring additional named parties into this matter, it must satisfy procedural standards set forth
28  in the Federal Rules of Civil Procedure, Local Rules, and Orders of this Court.

1    any and all sanctions authorized by statute or Rule or within the inherent power of the Court.").

2                                        **CONCLUSION**

3          For the stated reasons, Defendants' motion to dismiss for failure to state a claim is

4    DENIED.  Defendants' motion to strike the "Doe" Defendants is GRANTED.  Defendants'

5    requests for sanctions and attorney's fees under Rule 11 and 28 U.S.C. § 1927 are DENIED.

6          **IT IS SO ORDERED.**

7    Dated:  August 15, 2013

8

9

10   _____
     Troy L. Nunley

11   United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                              21